75938. PAGE et al. v. GUIN et al.
(369 SE2d 517)

POPE, Judge.

Appellants Raymond and Gladys Page applied to the probate court, pursuant to OCGA § 44-4-2, for a processioning of the boundary line between their property and that owned by appellees, the Guins. The county processioners hired a surveyor and entered a return of processioners which included a plat which marked the boundary line in a manner which crossed fences erected by the Guins and extended over into a field which had been cultivated by the Guins. The Guins filed a protest to the processioning and the matter was submitted for bench trial before the superior court judge. At trial, conflicting testimony was presented concerning whether the fences erected by the Guins and their predecessors in interest had ever been moved to the east so as to encroach upon the property owned by the Pages and their predecessors in interest. On January 31, 1986 the trial court issued an order finding, inter alia, that the lands claimed by the

Guins had been under fence for more than seven years; that the processioners ignored the Guins' actual possession of the land under fence; and, therefore, rejecting the return of the processioners. The court concluded that the correct boundary line would be one "which respects [the Guins'] fenced land." There was evidence that the fences in question were not straight but were curved. Therefore, the court's order established that the true boundary line shall commence at the uncontested southern-most corner between the two properties and should run in a northwesterly direction in a straight line to the eastern-most point of the first curve in the fence; from there in a straight line to the next eastern-most point, etc., to a point where said line intersects with the property line of an adjoining land owner not a party to this action, as shown on the return of the processioners.

On March 3, 1986 the Pages filed a timely motion for new trial, setting forth the general grounds. A rule nisi was entered setting April 10, 1986 as the hearing date for said motion. On the date designated for hearing, the transcript had not yet been filed. No extension for filing the transcript was ever sought by the Pages, the moving parties. The record shows the transcript was filed by the court reporter on July 24, 1986. On June 5, 1987 the Pages filed a motion for injunctive relief seeking an order barring the Guins from entering upon the disputed land. However, no further request for a hearing date or any other action in pursuance of the motion for new trial was taken. Finally, on September 1, 1987 the trial court entered an order denying the Pages motion for new trial. That order included a finding that the Pages had abandoned their right to a hearing on the motion for new trial by failure to pursue that motion. This appeal is taken from the judgment of the court on the processioning action and the court's denial of the Pages' motion for new trial.

1. The Pages' first two enumerations of error argue the trial court erred in denying their motion for new trial without first conducting a hearing on the motion. "We are well aware of a movant's right to a hearing upon a motion for new trial. However, we are also cognizant of the fact that a party, especially in civil proceedings, may waive or abandon that right." *Peyton v. Peyton*, 236 Ga. 119, 120 (223 SE2d 96) (1976). In *Peyton* as in the case at hand, the motion for new trial could not be heard on the date originally set because the transcript of the trial was not complete on that date. The movant for new trial failed to move the court for a new date for hearing even after the opposing party had moved to dismiss the motion for new trial. In that case, it was held the trial court was justified in ruling on the merits of the motion for new trial solely upon the briefs. In the case at hand, over one year from the date the motion for new trial was originally supposed to have been heard, movants filed a separate motion for injunctive relief and requested a hearing on the motion for injunctive

relief. Although the motion for injunctive relief was based in part upon the pending motion for new trial, no further effort was made to set a date for hearing the motion for new trial. Where the movant on a motion for new trial allows the date for hearing the motion to pass without any further action on his part, not even requesting an extension of time for the filing of the transcript, the motion for new trial must be treated as having been abandoned. *Moody v. State*, 14 Ga. App. 523 (2) (81 SE 588) (1914). The facts of this case are distinguishable from those found in *Reid v. Bryant*, 100 Ga. App. 105 (1) (110 SE2d 571) (1959), because there the order setting the date for an oral hearing contained broad permissive language permitting the motion for new trial to be heard at anytime if, for any reason, it could not be heard at the time and place fixed by the order. Moreover, in that case, prior to the date on which the motion was originally set for hearing, the parties consented to an indefinite continuance of the hearing. In the case now before us, movant made no effort to seek a continuance of the hearing for over one year. Therefore, the trial court was justified in concluding the Pages had abandoned their right for an oral hearing on the motion and was justified in deciding the motion on the briefs originally submitted.

2. The trial court did not err in denying the motion for new trial. The record shows there was conflicting testimony on the issue of how long the fences in question had been in place and whether they had ever been moved to encroach upon the Pages' land. However, it was the task of the superior court, as the trier of fact, to arrive at a verdict after weighing the conflicting evidence. On appellate review, this court may reverse the decision of the lower court to deny a new trial only if there was no evidence to support the verdict. *Burnet v. Bazemore*, 122 Ga. App. 73 (176 SE2d 184) (1970) (on motion for rehearing). Because there was evidence to support the verdict, we may not reverse the decision to deny a new trial.

3. The Pages' claim the trial court erred in not granting or otherwise ruling on their motion to dismiss the Guins' protest to the processioners return because the protest failed to specify the true lines claimed by them, as required by OCGA § 44-4-9. The protest in this case did set forth what the true line was alleged to be, namely, that line shown on an earlier plat recorded in 1911. Therefore, the protest was not legally insufficient.

4. Finally, the Pages argue the judgment rejecting the return of the processioners and establishing another line as the true property line should be reversed for lack of evidence to support the judgment and because the judgment is too vague to be enforceable. " 'Under the law of processioning as it exists in this State, established lines, and not new ones, are to be fixed and determined; the location of lines, not as they ought to be, but as they actually exist, is to be sought; and

where one has been in actual possession of land for more than seven years, under a claim of right, such claim shall be respected by the processioners, even though the land so possessed should be found to be within the original line of the opposing party.' [Cit.]" *Osborne v. Thompson*, 154 Ga. App. 215 (1) (267 SE2d 852) (1980). See also OCGA § 44-4-7. Pursuant to the statutory rules governing the processioning of property lines, natural markers and landmarks and established marked lines appearing on the property take precedence over strict mathematical courses and distances shown on recorded plats. OCGA § 44-4-5. "General reputation in the neighborhood shall be evidence as to ancient landmarks of more than 30 years' standing." OCGA § 44-4-6.

The record in the case now before us suggests that ancient markers recognized by the coterminous landowners for well over thirty years may have deviated from the courses and distances set forth on the recorded plats. Additionally, testimony was presented that the Guins, protestants to the processioning, had maintained fences which crossed the recorded property lines and had cultivated land up to the fences thereby evidencing a claim of right to these lands for more than seven years. In this case, the processioners staked out the property line in an apparent attempt to establish the line where it ought to have been in strict compliance with titles and plats. In doing so, the processioners ignored long-established markers and the Guins' actual possession of land under a claim of right as evidenced by their fences and cultivation of land. Thus, the trial court did not err in finding against the return of the processioners.

The issue on the trial of a protest to processioning is not confined to approving or disapproving the line established by the processioners but, if the evidence warrants, a verdict may be entered in favor of the line established by the protestants. *Rogers v. Beavers*, 76 Ga. App. 16 (1) (45 SE2d 74) (1947); *Reynolds v. Kinsey*, 50 Ga. App. 385 (4) (178 SE 200) (1935). However, the court in this case approved neither the plat submitted by the processioners nor that submitted by the protestants. Instead, the order attempted to describe what it found, after consideration of the evidence, to be the true line. The original property line ran from an uncontested and established southern-most point identified in the processioners return and proceeded in a generally northwesterly direction to its intersection with the southern property boundary of a third coterminous landowner not a party to this action. The evidence showed the Guins (protestants) and their predecessors in interest had erected fences which curved back and forth across this line at several points. The trial judge found the true line to run in a series of straight lines from the uncontested southern-most point to the eastern-most curves along these fences.

While the line described by the court's order is supported by the

evidence adduced at trial, it is not sufficiently specific to serve as a processioning line. By statute, in a processioning proceeding a plat of the true line is to be delivered to the applicant and filed with the probate court. Both the certified plat and the line marked along the actual boundary shall be admissible in evidence in all future boundary disputes. OCGA §§ 44-4-3 and 44-4-4. The findings of the trial court in this case contain an accurate description of the true property line and are supported by the evidence. However, the order as it now stands is not, of itself, sufficient to serve as a return of processioning. The order recognized these limitations and permitted the record to remain open for thirty days for the parties to submit a proposed supplemental order more accurately describing and reflecting the line described in the order itself. Where the processioners have not actually run the disputed line or the return is otherwise legally insufficient, the court may not order the processioners to run another survey. *Rawls v. Nowell*, 133 Ga. 874 (2) (67 SE 187) (1910). In this case the return of the processioners was legally sufficient even though it was rejected as inaccurate. The order permitting either party to submit a plat reflecting the findings of the court was appropriate under the circumstances and promotes judicial economy and efficiency. As it turns out, neither party submitted a proposed supplemental order before the motion for rehearing was filed within thirty days from the date the order was entered.

We remand this case to the lower court to permit either party, within thirty days of remittitur, to present a proposed supplemental order including a plat which would reflect the description contained within the court's order. Without such a plat, the order will serve merely as a rejection of the return of the processioners though the judgment will, of course, serve as the law of the case concerning the court's findings of fact. However, if either party wishes the judgment to serve as a certified survey as provided in OCGA § 44-4-3, that party may respond to the court's request and submit for the court's approval a surveyor's plat conforming to the findings of fact contained within the judgment.

*Judgment affirmed and case remanded with instructions. Mc-Murray, P. J., and Benham, J., concur.*

DECIDED MAY 13, 1988.

*David B. Pittman*, for appellants.
*Ben P. Jackson, Jr.*, for appellees.